PERSONAL FINANCE

# Bureau Of Prisons Holding Inmates For Longer Than Law Allows

**Walter Pavlo** Contributor
*I write and consult on federal criminal law and criminal justice.*

Follow

Jul 6, 2022, 12:58pm EDT

Listen to article   7 minutes

0 



Federal inmates are being held behind bars because the Bureau of Prisons computer system is lagging ... [+]   GETTY IMAGES

The federal Bureau of Prisons (BOP) reported that between 2009 and 2014, that nearly 4,500 inmates were categorized as "untimely

releases" (either too soon or too late). According to an Office of Inspector General Report, BOP officials reported that it was highly unlikely that staff error on its part contributed to many of cases, *"they could not rule out the possibility .... that the BOP does not always have complete information about the circumstances of untimely releases ..."*.

The consequences of an untimely release can be serious. Late releases from prison deprive inmates of their liberty, while early releases do not fulfill the the requirements of the law and also could potentially release prisoners who could be a danger to the community. Late releases also come with added costs for the BOP but there is also potential for significant compensatory judgments to those inmates who who were deprived of their freedom. In the OIG's report, they noted that for 152 late release of prisoners that it estimated the total cost to the BOP, exclusive of litigation and settlement costs, to be approximately $669,814. The BOP is now in a crisis that is potentially far worse than previous problems with calculating the proper sentence duration as thousands of prisoners are not receiving their appropriate First Step Act (FSA) credits. This will result in prisoners staying weeks or months beyond their scheduled, earned, release date. The BOP even knows this about it to happen.

Once a prisoner is taken into custody, a sentence computation is conducted, which accounts for Good Time Credit of 54 days for each year of the sentence imposed. That date is posted on the BOP's website so that a prisoner and his/her family can see a specific date when the sentence will be completed. The FSA, signed into law by President Donald Trump in December 2018, allows many prisoners to earn additional time off of their sentence, up to a year, and also earn extensive time in pre-release custody (halfway house and home confinement). Those credits, up to 15 days for every 30 days

of holding a job and participating in programs/education, can be significant. It means the difference between rejoining one's family a year or more earlier than before the FSA. However, there are reports from around the country that the BOP is not providing accurate information to prisoners about their FSA credits and some are staying in prison longer than necessary.

FSA was one of the most sweeping criminal justice reform acts that the U.S. government has implemented in decades. It followed the Second Chance Act, signed by President George W. Bush, and was an indication that the American public along with Congress was moving toward reducing prison terms of many non-violent and low recidivist prisoners. However, the BOP has been slow in implementing the program due to staff shortages, attempts to address COVID-19 in prisons and poor leadership.

A declaration by BOP's Susan Giddings in a federal civil case (Northern District of Alabama, 1:22-cv-00294, Stewart v Warden) provides a glimpse of the challenges the BOP faces in trying to implement FSA. Giddings is the Chief of the Unit Management Section of the Correctional Programs Branch at the BOP's Central Office in Washington DC. In addition to her role overseeing Correctional Systems, she has been involved in the development and implementation of the BOP's FSA procedures. As part of Giddings' declaration for the Petitioner, inmate Robert Stewart, she noted that "... *for reasons that are not apparent to me, Petitioner's FSA credits were in fact incorrectly calculated.*" If one person's is wrong, many others are as well. One of the reasons might be that the BOP is currently calculating these FSAs manually.

MORE FROM FORBES ADVISOR

**Best Travel Insurance Companies**

By **Amy Danise** Editor

### Best Covid-19 Travel Insurance Plans

By **Amy Danise** Editor

The case of Stewart v Warden is pretty straight forward. Stewart, a former inmate at the prison camp in Talladega, AL, is serving a 21 month sentence for wire fraud and he wanted the BOP to give him the full amount of FSA credits he is due. Sure enough, not only were his FSA credits calculated wrong, as stated by Giddings, but there are other issues that will certainly hamper other inmates from getting their timely FSA credits applied.

According to Giddings' declaration, the BOP has already begun implementing the FSA and is doing so on a "rolling basis." On January 12, 2022, the BOP established an interim procedure to ensure timely implementation of the FSA. Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement. These interim procedures will remain in effect during this initial period and will continue pending the completion of an "auto-calculation application" to BOP's real-time information system known as SENTRY and the full integration between SENTRY and the BOP's case management system (INSIGHT). In Giddings' declaration from April 2022, she stated that she expects that the BOP will "go live" with its new application in the "coming months." No firm date was stated.



The issue comes with the BOP's decision to set certain cutoff dates for manual FSA time credit calculations to "ease the burden on staff," which is another way of saying staff shortages are affecting the BOP's rollout of FSA. According to Giddings, *"once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system."* So a person like Stewart, whose last manual calculation, which Giddings admitted was incorrect, was done April 12, 2022. This means that the next time Stewart would get a new calculation would be after the automated computation would be implemented, whenever that happens.

Stewart won his case against the BOP and the judge ordered that the BOP calculate his FSA credits every 60 days, manually, until he was released. This calculation frequency is something no other inmate is afforded, unless a federal judge intervenes as he did in Stewart's case. As the result of the judge intervening in this case, Stewart will be released on July 22, 2022. Had the judge not given this order, Stewart would have been released October 20, 2022 unless a more automated means of calculating the FSA had been implemented.

Thousands of inmates are in the position to be freed under FSA but many will be held longer than necessary as the BOP tries to get its computer system up to speed. As one family told me about waiting for the BOP's new sentence calculator, "it can't come soon enough."

*Follow me on Twitter or LinkedIn. Check out my website or some of my other work here.*



**Walter Pavlo**

Follow

I founded Prisonology, an expert network firm of retired Bureau of Prisons professionals, to work with defendants and criminal defense lawyers...

**Read More**

Editorial Standards

Reprints & Permissions

ADVERTISEMENT